1  DURIE TANGRI LLP
   MARK A. LEMLEY (SBN 155830)
2  mlemley@durietangri.com
   SONAL N. MEHTA (SBN 222086)
3  smehta@durietangri.com
   217 Leidesdorff Street
4  San Francisco, CA  94111
   Telephone:  415-362-6666
5  Facsimile:   415-236-6300

6  Attorneys for Defendant
   Audience Entertainment LLC
7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                      WESTERN DIVISION

| | |
|---|---|
| 11 TIMEPLAY, INC., a Canadian corporation, | Case No. 2:15-cv-05202-SJO-JC |
| 12 | **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PATENTABLE SUBJECT MATTER** |
| 13 Plaintiff, | |
| v. | |
| 14 | Date:  October 19, 2015 |
| 15 AUDIENCE ENTERTAINMENT LLC, a Delaware Limited Liability Company, | Time:  10:00 am |
| 16 | Ctrm:  1 |
| Defendant. | Judge: Judge S. James Otero |
| 17 | |

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................... 1

II.   LEGAL STANDARDS ........................................................................... 2

    A.    The Court Can And Should Undertake The Section 101 Inquiry At The Pleadings Stage........................................................................... 2

    B.    THE SUPREME COURT'S SECTION 101 FRAMEWORK ....................... 3

III.  THE PATENT-IN-SUIT IS DIRECTED TO UNPATENTABLE SUBJECT MATTER ............................................................................................... 4

    A.    Claim 1 Is Directed to Basic Concepts of Multi-Player Gaming................... 5

    B.    *Alice* Step One:  The Patent Is Directed to an Abstract Idea ......................... 6

    C.    *Alice* Step Two:  The Patent Does Not Claim An "Inventive Concept"....... 10

        1.    The Only Hardware Described Is In Purely Functional And Generic Terms............................................................................. 11

        2.    The Claims Do Not Improve The Functionality Of The System's Components ............................................................................... 12

        3.    The Claims Risk Unduly Preempting Multi-Player Gaming With A Shared Display ...................................................................... 13

    D.    The Remaining Claims Are Also Unpatentable........................................... 15

IV.   CONCLUSION..................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**<u>Cases</u>**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) ................................................................. 12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ..................................................................... passim

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015) ................................................................. 14

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ............................................................... 1, 2, 4, 13

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ............................................................. 7, 12

*CLS Bank Int'l v. Alice Corp. Pty. Ltd*,
  717 F.3d 1269 (Fed. Cir. 2013) ................................................................. 4

*Compression Tech. Solutions, LLC v. EMC Corp.*,
  557 Fed. App'x 2002 (Fed. Cir. 2014) ........................................................ 3

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A*,
  776 F. 3d 1343 (Fed. Cir. 2014) ....................................................... 3, 4, 16

*Cyberfone Sys., LLC v. Cellco P'ships*,
  885 F. Supp. 2d 710 (D. Del. 2012) ........................................................... 2

*Cybersource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ................................................................. 7

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ................................................................. 2

*Funk Bros. Seed Co. v. Kalo Inoculant Co.*,
  333 U.S. 127 (1948) ............................................................................... 1

*In re TLI Commn's Patent Litig.*,
  MDL No. 1:14md2534, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) .......................... 9, 12

*Intellectual Ventures I, LLC v. Motorola Mobility LLC*,
  No. 11-908-SLR, 2015 WL 846532 (D. Del. Feb. 24, 2015) .............................. 12

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) ................................................................. 2

*IPLearn, LLC v. K12 Inc.*,
  No. CV 11–1026–RGA, 2014 WL 7206380 (D. Del. Dec. 17, 2014) ........................ 9

*IPLearn-Focus, LLC, v. Microsoft Corp.*,
No. 14–cv–00151–JD, 2015 WL 4192092 (N.D. Cal. July 10, 2015) ................ 7, 8, 14

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
66 F. Supp. 3d 829 (E.D. Tex. 2014) .................................................................. 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012) ................................................................................. passim

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) ............................................................................ 2

*Open Text S.A. v. Box, Inc.*, No.
13-cv-04910, slip op. (N.D. Cal. Jan. 20, 2015) ................................................. 12

*Open Text S.A., v. Alfresco Software Ltd.*,
No. 13-cv–04843-JD, 2014 WL 4684429 (N.D. Cal. 2015) ............................... 11

*Planet Bingo, LLC v. VKGS LLC*,
576 Fed. App'x 1005 (Fed. Cir. 2014) ................................................................. 6

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
601 F.3d 1319 (Fed. Cir. 2010) ............................................................................ 2

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ............................................................................. 2

**<u>Statutes</u>**

35 U.S.C. § 101 .......................................................................................... passim

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 2

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS/CASE NO. 2:15-CV-05202-SJO-JC

## I.     INTRODUCTION

The Supreme Court has made clear time and again that "abstract ideas" may not be removed from the public domain and subjected to the monopoly granted by our patent laws. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355, (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010).   These fundamental concepts are "part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none." *Bilski*, 561 U.S. 602 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)).  Instead, patent law protects only concrete and tangible inventions.  It does not protect abstract ideas or concepts, even when those concepts are implemented using conventional computer hardware.  *Alice*, 134 S.Ct. at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."); *id.* at 2359 (requiring the performance of "computer functions [that] are 'well-understood, routine, conventional active[ties]' previously known to the industry" is nothing more than "simply instruct[ing] the practitioner to implement the abstract idea . . . on a generic computer" (citing *Mayo*, 132. S. Ct. at 1294)).

U.S. Patent No. 8,951,124 ("the '124 Patent") claims nothing more than the abstract idea of allowing multiple people to play a game together on a shared display using generic computer and communications hardware.  Although the patent claims are laden with technical jargon and the sort of turgid language that has become a hallmark of patent drafting, at bottom, they recite nothing more than the concept of multi-player gaming on a shared screen implemented with conventional computer and communications equipment specified at a high level of generality and performing conventional functions.  That is simply not enough to make them patentable.

Audience Entertainment respectfully requests that this Court find that all claims of the patent-in-suit are invalid, and dismiss TimePlay's Complaint accordingly.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS/CASE NO. 2:15-CV-05202-SJO-JC

## II.   LEGAL STANDARDS

### A.   The Court Can And Should Undertake The Section 101 Inquiry At The Pleadings Stage

Whether a patent claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry and an issue of law. *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *see also Bilski*, 561 U.S. at 602 (describing Section 101 as "a threshold test."); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) (noting that "whether a claim is drawn to patent-eligible subject matter is an issue of law").

For this reason, a district court has broad discretion as to the appropriate time to decide whether a claim satisfies the requirements of Section 101.   In line with this discretion, many federal district courts have resolved disputes over patentable subject matter on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).   The Federal Circuit has regularly affirmed Rule 12 dismissals on the basis of patentable subject matter. *See, e.g.*, *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015) (affirming Rule 12(b)(6) determination of ineligibility); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (same); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712 (Fed. Cir. 2014) (same).

In the present case, the Section 101 issue is ripe for decision because the validity of the asserted claims does not turn on claim construction.   To the extent TimePlay thinks that its preferred construction of a particular term would make a difference to the eligibility analysis, it should come forward with that construction, provide the supporting intrinsic evidence, and explain how its construction would change the result. *Cyberfone Sys., LLC v. Cellco P'ships*, 885 F. Supp. 2d 710, 715 (D. Del. 2012) (because "plaintiff did not explain how claim construction might alter [the court's Section 101] analysis . . . the court concludes that it may proceed without the benefit of claim construction").   Absent such a showing, however, the Section 101 issue may properly be decided without claim construction. *See Compression Tech. Solutions, LLC v. EMC Corp.*, 557 Fed. App'x 2002

1  (Fed. Cir. 2014) (summary affirmance of district court's decision to invalidate claims

2  under Section 101 prior to claim construction after concluding that accepting plaintiff's

3  proffered construction made no difference in the result).

4  **B.   THE SUPREME COURT'S SECTION 101 FRAMEWORK**

5  The Supreme Court has prescribed a two-step approach for resolving the question of

6  whether a claim is drawn to subject matter that falls outside the scope of Section 101.

7  *Alice*, 134 S. Ct. at 2355; *Mayo*, 132 S. Ct. at 1294–98.  The first step is to determine

8  whether the claim at issue is directed to a "patent-ineligible concept" such as an abstract

9  idea. *Alice*, 134 S. Ct. at 2355.  If it is, the second step is to identify "what else" is claimed

10 in order to determine whether the claim describes an "inventive concept" that is

11 "significantly more" than the abstract idea and sufficient to "transform" the nature of the

12 claim.  *Id.*  If it does not, the claim is ineligible under Section 101 and therefore invalid.

13 If a patent claim includes an abstract idea, the necessary inventive concept cannot

14 simply be the implementation of the idea using standard, off-the-shelf computer

15 technology.  *Id.* at 2352 ("[M]erely requiring generic computer implementation fails to

16 transform that abstract idea into a patent-eligible invention."); *id.* at 2358–59 ("Given the

17 ubiquity of computers, wholly generic computer implementation is not generally the sort of

18 'additional featur[e]' that provides any 'practical assurance that the process is more than a

19 drafting effort designed to monopolize the [abstract idea] itself.' (quoting *Mayo*, 132 S. Ct.

20 at 1297)).[1]  Indeed, the Federal Circuit has made clear that even combining two or more

21 different pieces of standard computer technology is not sufficient to render a claim

22 patentable.  *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A,*

23 776 F. 3d 1343, 1347–48 (Fed. Cir. 2014).

24 Notably, method, system, and device claims are all analyzed identically under

25 Section 101.  The only inquiry for whether method, system, and device claims directed at

26

27

28

---

[1]      Emphasis added and internal citations omitted throughout, unless otherwise noted.

abstract ideas are invalid is whether the claims "add nothing of substance to the underlying abstract idea." *Alice*, 134 S. Ct. at 2360.  The Supreme Court has made clear that analyzing method, system and device claims differently under Section 101 would improperly "make patent eligibility 'depend simply on the draftsman's art.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294).  Accordingly, the mere fact that a system or device claim may include some hardware limitation not present in the method claims makes no difference for the Section 101 inquiry.  If "none of the hardware recited by the system claims 'offers a meaningful limitation beyond generally linking "the use of the [method] to a particular technological environment,"'" then the system claims must fail along with the method claims.  *Id.* (quoting *CLS Bank Int'l v. Alice Corp. Pty. Ltd*, 717 F.3d 1269, 1290 (Fed. Cir. 2013) (quoting *Bilski*, 561 U.S. at 610)).

Finally, while individual patent claims are independent legal rights, courts are free to treat claims together for purposes of resolving patentable subject matter where those claims contain the same basic elements.  This also flows from the basic principle that Section 101 turns on the subject matter of the claims, not on claim drafting.  *See Alice*, 134 S. Ct. at 2360.  For this reason, a movant may challenge eligibility through representative claims and without engaging in a repetitive attack on each claim individually.  *See Content Extraction*, 776 F. 3d at 1348 (finding that the district court "correctly determined that addressing each claim of the asserted patents was unnecessary" because "all the claims are 'substantially similar and linked to the same abstract idea'").

## III.   THE PATENT-IN-SUIT IS DIRECTED TO UNPATENTABLE SUBJECT MATTER

TimePlay's Complaint alleges that Audience Entertainment infringes "one or more" claims of the '124 Patent.  During the parties' meet and confer, Audience Entertainment requested that TimePlay identify which claims would be asserted or at least which claims would not be asserted in this case so that Audience Entertainment could focus this motion accordingly.  TimePlay declined to do so.  Accordingly, Audience Entertainment addresses

all claims in the patent, which should rise and fall together as explained below.

**A.     Claim 1 Is Directed to Basic Concepts of Multi-Player Gaming**

According to the '124 Patent, the claimed invention relates to "systems and methods for multi-player gaming."  D.I. 1-1 at Abstract.  Its stated goal is to address and ameliorate what it considers to be problems with multi-player gaming where a large number of people can play a game on a single large display screen like a movie screen.  *See id.* at 1:25-47.  While the patent *specification* describes a variety of embodiments of systems that allow multi-player gaming with a shared display, and even provides some specifics as to how it contemplates those systems would be designed, the patent *claims* are abstract.  To wit, the patent purports to claim the idea of allowing multiple people to play a game together using generic computer and communications hardware.

Claim 1 is exemplary and provides as follows:

1.      A multi-player game system comprising:

[1] a game server configured to run a game software to facilitate a multi-player game, the game server further configured to provide display signals for displaying the multi-player game;

[2] a display system having primary display means, the display system being configured to provide a primary game display of the multi-player game on the primary display means in response to the display signals;

[3] a plurality of handheld game controllers, each handheld game controller having secondary display means and input means; and

[4] communication controller for enabling communication between the game server and each handheld game controller;

[5] wherein the plurality of handheld game controllers are located in proximity to the primary display means such that the primary display means is visible to game players manipulating respective handheld game controllers; and

[6] wherein the game server is configured to download a game software module to each handheld game controller using the communication controller prior to initiation of the multi-player game, each game software

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:15-CV-05202-SJO-JC

module executable by the corresponding handheld game controller to enable the corresponding handheld game controller to provide a secondary game display on the secondary display means in response to player input received at the input means, wherein the secondary game display is complementary to the primary game display, and to enable participation in the multi-player game by the corresponding game player.

D.I. 1-1 at Claim 1.

In substance, the patent claims [1] a generic server running generic game software and sending generic display signals to a [2] generic display that shows the game to multiple people each with their own [3] generic game controller (with a display and interface for user input) that talks to the generic server via a [4] generic communications controller to [6] receive a download of a generic software module that allows the display on the generic game controller to be coordinated with that on the shared generic display.  Because the two displays are coordinated, the patent specifies that the generic game controllers should be [5] close enough to the shared generic display that the players can see the shared generic display while they are playing.

Critically, when all of the claim's generic computer and communications components (server, game controller, communications controller, display, etc.) are stripped away, all that remains is the underlying concept of multi-player gaming using a hand-held controller that has a display screen where the players are also in front of a shared display.

### B.    *Alice* Step One:  The Patent Is Directed to an Abstract Idea

The Supreme Court and the Federal Circuit have repeatedly found that methods of organizing "human activity" constitute abstract ideas.  *E.g.*, *Alice*, 134 S. Ct. at 2356; *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005, 1008 (Fed. Cir. 2014).  The claims of the '124 Patent are directed to just that:  a system that enables a basic method of organization of human activity—interactive game-playing with multiple people—on generic hardware.  Game-playing with groups of people is an age-old concept for organizing (or in the case of young children, ***attempting*** to organize) human activity.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:15-CV-05202-SJO-JC

Indeed, it is hard to think of a way to organize human activity that is more fundamental to the human existence or more ubiquitous than interactive game play with multiple people. And whether it be children playing in a classroom with a blackboard or families playing Pictionary at "game night," the concept of using a shared display to allow individuals to play the game together is just as basic.

Second, and closely related, if the claims can be performed by human beings in a non-computerized context, minus the limitations that require generic computer implementation, they are abstract. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014); *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371–73 (Fed. Cir. 2011). Here, aside from the limitations that include or require a generic computer or communications system implementation, the asserted claims amount to little more than the human executable (and ubiquitous) act of multiple people playing a game together in front of a shared display such as that blackboard or Pictionary easel.

It is true that the invention here uses computer technology. But that does not prevent it from including an abstract idea. To the contrary, virtually every Federal Circuit decision invalidating a claim under the *Alice* framework has involved an idea implemented in computer technology. The question in step one of the *Alice* analysis is whether the claims include an abstract idea, even if that idea operates in the sphere of computer technology or is implemented using computer devices. That is true here. Not only have people been playing games together for ages, but people have been playing video games against each other in front of a television screen since well before the date of this patent.

For all of these same reasons, district courts reviewing claims conceptually similar to those at issue here have found those claims to be directed to abstract ideas. For example, in *IPLearn-Focus, LLC, v. Microsoft Corp.*, No. 14–cv–00151–JD, 2015 WL 4192092 (N.D. Cal. July 10, 2015), the district court addressed the subject matter eligibility of a claim directed to "a computer-implemented system helping a user learn using a detached imaging sensor. . . ." *Id.* at *2. "Through monitoring the user's volitional

1    or involuntary behavior, the system determines whether to change what is to be presented
2    by the display[,]" and the "change could include providing rewards, punishments, and
3    stimulation; or changing the materials." *Id.* Notably, the representative claim in that case
4    was similar to the claims of the '124 Patent in that they both relate a system combining
5    various computer-implemented hardware elements such as a display and processor:

6         1.    A computing system comprising:

7         a display;

8         an imaging sensor to sense a first feature of a user regarding a first volitional
          behavior of the user to produce a first set of measurements, the imaging
9         sensor being detached from the first feature to sense the first feature, the first
          feature relating to the head of the user, and the first set of measurements
10        including an image of the first feature, wherein the system further to sense a
          second feature of the user regarding a second volitional behavior of the user
11        to produce a second set of measurements, the second feature not relating to
          the head of the user; and
12
13        a processor coupled to the imaging sensor and the display, the processor to:

14        analyze at least the first set and the second set of measurements; and

15        determine whether to change what is to be presented by the display in view
          of the analysis.
16
17   *Id.*

18        In analyzing this claim, the court in *IPLearn-Focus* determined that "[a] plain
19   reading of the patents as a whole establishes beyond any reasonable dispute that they seek
20   to implement on a computer the watchful eye of a good teacher, 'who constantly observes[]
21   concentration-sensitive behavior, and dynamically adjusts her teaching materials and style
22   accordingly.'" *Id.* at *4.  The court determined that the "concept of a monitored response to
23   presentations is an abstract idea, pure and simple." *Id.*

24        Critically, the court rejected an argument by the patent-holder that it should "focus
25   on the minutiae of the physical components, like displays, processors, and sensors, recited
26   by the claims" to find that the claims were not directed to something more than the abstract

27

28

8

1   idea.  *Id.*   Instead, the court followed the guidance of *Alice* and its progeny to strip away

2   the conventional technology and instead evaluate the underlying concept of claims:

> ***Put aside the parts reciting standard technology*** ("display," "imaging
> sensor," "processor," etc.), and what is left is "sens[ing]" two features of the
> user to generate measurements, "analyz[ing]" the measurements, and
> "determin[ing] whether to change what is to be presented by the display in
> view of the analysis." '320 patent, claim 1.  In essence, the claim follows
> several steps involved in the abstract idea of teaching, though without
> actually mentioning that specific application: the sensor observes students
> and the processor analyzes their behavior and reacts accordingly. The steps
> are an abstraction, "addressed to fundamental human behavior related to
> instruction, which is apparent when the steps are summarized without their
> generic references to [hardware]."

*Id.* (quoting *IPLearn, LLC v. K12 Inc.*, No. CV 11–1026–RGA, 2014 WL 7206380, at *6

(D. Del. Dec. 17, 2014) (holding that a patent directed at the abstract idea of "instruction,

evaluation, and review," purports to cover learning methods that "seem[] precisely the

building blocks of ingenuity the Supreme Court in *Alice Corp.* was so concerned about

inhibiting.")).

   The claims of the '124 Patent are no different from those at issue in *IPLearn-Focus*.

Just as in *IPLearn-Focus*, the court should not "focus on the minutiae of the physical

components, like displays, processors, and sensors, recited by the claims" but instead look

at the underlying concept that is being claimed.  Here, as there, "put aside the parts reciting

standard technology ('display,' '[communications controller],' '[game server],' etc.)," and

what is left in the claims is the concept of "facilitat[ing] a multi-player game" where the

game players have a personal display on their controller and are playing on a shared

display.  In other words, an abstract idea that is claimed as a system of various generic

computer and communications components is still an abstract idea.[2]

---

[2]     Other cases reject similar claims.  In *In re TLI Commn's Patent Litig.*, MDL No.
1:14md2534, 2015 WL 627858 (E.D. Va. Feb. 6, 2015), the court granted a motion to
dismiss a claim that, like the ones here, involved communication of digital images between

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:15-CV-05202-SJO-JC

## C.   *Alice* Step Two:  The Patent Does Not Claim An "Inventive Concept"

The second step of the *Alice* inquiry requires the Court to search for an inventive concept that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."  *Alice*, 134 S. Ct. at 2355.  Here, there can be no genuine dispute that the asserted claims are lacking any inventive concept.

---

a handheld device and a central computer.  That claim read:

> A communications system for recording and administering digital images, comprising:
>
> at least one telephone unit including:
>
> a telephone portion for making a telephone call,
>
> a digital pick up unit for recording images,
>
> a memory for storing images recorded by the digital pick up unit,
>
> means for allocating classification prescribed by a user of said at least one telephone unit to characterize digital images obtained by said digital pick up unit, a processor for processing the digital images recorded by the digital image pick up unit;
>
> a server including the following components:
>
> a receiving unit for receiving data sent from said at least one telephone unit,
>
> an analysis unit for analyzing the data received by the receiving unit from the telephone unit,
>
> the data including classification information to characterize the digital images,
>
> a memory in which at least the digital images are archived,
>
> the archiving taken [sic] into consideration the classifying information; and
>
> a transmission system coupled to said at least one telephone unit and to the said server to provide for transmission of data from said at least one telephone unit and to the said server, the data including at least the digital images recorded by the digital image pick up unit and classification information.

*Id.* at *1–*2.

---

10

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:15-CV-05202-SJO-JC

### 1.   The Only Hardware Described Is In Purely Functional And Generic Terms

The Supreme Court has explained that "if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,'. . . that addition cannot impart patent eligibility." *Alice*, 134 S. Ct. at 2358 (quoting *Mayo*, 132 S. Ct. at 1301).  In *Alice*, the Court invalidated the claims because the hardware invoked was "purely functional and generic." *Id.* at 2360.

Applying that standard, the '124 Patent claims rely on a generically-specified computer and communications devices, and thus ultimately amount to nothing more than claims to implement the abstract idea with generic computers and communications components.  Indeed, the components in the asserted claims are described in generic and functional ways.  For example, in representative claim 1, the "display" claimed as "display" having a primary "display means" and being configured to provide a display of the game in response to display signals. D.I. 1-1 at Claim 1.  The "game server" is claimed as configured to run and download software and provide display signals. *Id.* The "communication controller" is "for enabling communication between the game server and each handheld controller." *Id.*  Likewise, even the dependent claims that have additional limitations on the hardware, describe generic components like a "large screen display" (D.I. 1-1 at Claim 2) or "wireless communications means" such as "wireless receivers," "wireless transmitters" and "wireless transceivers" (D.I 1-1 at Claims 17-21).[3]

Ultimately, none of these articulations of the system components are sufficient to

---

[3]   In any event, the addition of further components in the dependent claims does not render them patentable.  *See Open Text S.A., v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429, at *5 (N.D. Cal. Sept. 19, 2014) (rejecting dependent claims with the additional limitation of an e-mail server because such a claim "merely builds on the same basic concept . . . by using . . . a decades-old technology that is certainly not inventive – to accomplish the abstract . . . scheme" and determining that "[i]n no way does that sufficiently limit the nature of the abstract idea").

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:15-CV-05202-SJO-JC

save the claims because none of the claims require any hardware or software beyond commonly available components.  Indeed, numerous courts (including the Supreme Court) have found that recitation of hardware of precisely this sort of is just not enough.  *E.g.*, *Alice*, 134 S. Ct. at 2360 (explaining that "what petitioner characterizes as specific hardware–a 'data processing system' with a '***communications controller***' and 'data storage unit,' ... is purely functional and generic"); *In re TLI*, 2015 WL 627858, *1–*2, *26 (invalidating claim covering a system comprising a "telephone unit," "processor," "memory," and "server"), *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (finding claims reciting a client and ***server*** invalid); *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910, slip op. at 8 (N.D. Cal. Jan. 20, 2015) (rejecting Open Text's assertion that the use of a "***server***" renders a claim patent eligible); *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, No. 11-908-SLR, 2015 WL 846532, at *8 (D. Del. Feb. 24, 2015) (holding that recitation of hardware elements such as a "remote computer system," a "user station," and a "communications network" are "insufficient" to render claimed subject matter patent eligible); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 833 (E.D. Tex. 2014) (Bryson, J., sitting by designation) (finding claims directed to "a computer serving a set of one or more Web pages . . . to one or more remotely located client machines" invalid under Section 101). Because all of the hardware recited by the claims of the '124 Patent is described by generic and functional language, it provides no inventive concept to limit the extent to which the asserted claims attempt to monopolize the abstract idea.

### 2. The Claims Do Not Improve The Functionality Of The System's Components

Another factor courts can look to for an inventive concept is whether the claims "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d at 1354; *Alice*, 134 S. Ct. at 2351.

The '124 Patent does not purport to make any improvement to the generic hardware on which the claims run.  For example, the patent does not purport to invent any new or novel display, instead describing the primary (shared) display as "preferably a large display screen, for example of a size which is used in a cinema," and contemplating that that screen be a "projection screen" using "normally used for projecting films if that equipment is configured for projecting digital images." D.I. 1-1 at 2:20-27 (Summary of the Invention).  As another example, the patents do not purport to invent new or novel game controller.  *Id.* at 2:28-32 ("The game controllers are preferably small handheld computing devices with wireless transmitter means for communicating with the game server." (Summary of the Invention)).

And importantly, the claims will not make any of their computer or communications components run faster or more efficiently.  Instead, the claims are only directed at combining those preexisting components (each used for its previously intended purposes) to achieve the overall purpose of the claim—its underlying abstract idea.

### 3. The Claims Risk Unduly Preempting Multi-Player Gaming With A Shared Display

A patent on an abstract idea effectively preempts the idea itself, and attempts to claim ownership of inventions that a patentee never conceived of, and did not contribute to the state of the art by way of his patent application.  *See Bilski*, 561 U.S. at 611–12; *Mayo*, 132 S. Ct. at 1294 (finding that, by covering a broad range of potential known and unknown uses of an abstract idea, a patent would preempt an entire field and "risk disproportionately tying up" the use of the abstract idea).  For that reason, *Alice* cautioned courts to "distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more." *Alice,* 134 S. Ct. at 2354.  "The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection.  The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:15-CV-05202-SJO-JC

laws." *Id.*  To be clear, preemption is not the test for patentability.  A claim that fails the two-step *Alice* framework is unpatentable whether or not it preempts broadly.  *Mayo*, 132 S. Ct. at 1302 ("The laws of nature at issue here are narrow laws that may have limited applications, but the patent claims that embody them nonetheless implicate this concern."); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility.… Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, as they are in this case, preemption concerns are fully addressed and made moot.").  But preemption is one of the concerns that motivates the patentable subject matter analysis.

Here, the claims risk potentially preempting the concept of multi-player gaming with a shared display broadly—for entertainment, for educational purposes, in the sports context, just to name a few.  Indeed, taken on their face and as TimePlay's Complaint alleges it is applying them, the claims of the '124 Patent could be read to cover multi-player gaming with a shared display in virtually any context or configuration so long as generic, functional components of a display (such as a smartphone), server, controller, etc. are employed.  Such broad claims jeopardize future innovation disproportionately "relative to the contribution of the inventor."  *Mayo*, 132 S. Ct. at 1303.  And indeed, "[t]he fact that the patents describe a wide variety of alternative configurations of generic hardware only underscores their potential to preempt virtually all practical implementations of the concept."  *IPLearn-Focus*, 2015 WL 4192092, at *6.

To be sure, TimePlay may have invented something new and described that invention in the '124 Patent.  The specification includes discussion of a number of specific technologies, and it may be that one or more of those specific technologies is novel.  But TimePlay made the strategic decision during the eleven years its application was pending in the Patent Office to pursue patent claims that were not limited to any of those technologies.  Rather, TimePlay has sought to write its claims in such a broad, abstract

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:15-CV-05202-SJO-JC

manner that they cover virtually any system of multi-player gaming that combines basic off-the-shelf components, including devices like modern smartphones that TimePlay cannot even purport to have invented.  It is just that effort to write broad, abstract, functional claims rather than claims to specific implementing technology that *Alice* forbids.

### D.  The Remaining Claims Are Also Unpatentable

Claim 1 is representative of the remaining asserted claims for purposes for the Section 101 patentability analysis.  Claim 1 is substantively the same as the other independent claims—claims 37 and 38—with only minor differences: (a) claim 37 contemplates "local" generic game controllers with a user input interface (but without their own display) and adds the requirement of at least one generic game controller that is "remote" from the shared display that has its own display; and (b) claim 38 is identical to claim 1 except that it adds the clause that the generic software module downloaded to the controllers is to "facilitate game activities corresponding to the multi-player game."  These differences do not go to the subject matter of the claim or its patentability.

The dependent claims (claim 2-36) also relate to the same subject matter, claiming generally the same system but with various additional limitations directed to: (a) specifying the display is a large screen display (claim 2); (b) locating the system in a "game arena" (claims 3-4); (c) connecting the controllers to a fixed structure or tethering the controllers (claims 5-10); (d) the relationship between what is displayed on the shared displays and individual displays (claims 11-13); (e) specifying the game controller display relates to a single player's activity and its type (claims 14-16); (f) claiming the generic communications controller is coupled to a generic "wireless communications means" and how (claims 17-21); (g) providing that each individual player can be represented as an avatar on the shared display and receives some feedback (e.g., visual, vibratory, or auditory) (claims 21-24); (h) conventional input means such as a joystick or touchscreen (claims 25-28); (i) separate conventional power sources for the generic game controllers (claims 29-30); (j) processor for processing commands and communications between the

game controller and game server (claims 31-33, 36); and (k) messaging between users (claims 34-35).   Because these differences again are directed to, at best, further abstractions of the multi-player gaming concept or further recitation of generic computer and communications hardware, the additional requirements of the various dependent claims do not go to the ultimate subject matter of the claims or there patentability.[4]

## IV.   CONCLUSION

For the foregoing reasons, Audience Entertainment respectfully requests that the Court grant its Motion To Dismiss For Lack Of Patentable Subject Matter.

Dated:  September 3, 2015                     DURIE TANGRI LLP

By:    _/s/ Sonal N. Mehta_
                                                    SONAL N. MEHTA

                                               Attorneys for Defendant
                                               Audience Entertainment LLC

---

[4]     To the extent that TimePlay contends that any of the dependent claims includes differences that are material to the patentability analysis, it is incumbent on TimePlay to confirm that it is in fact asserting that claim in the litigation and explain why it believes it should be considered separately so that Audience Entertainment and the Court can address it.  _Content Extraction_, 776 F. 3d at 1348 ("Moreover, CET never asserted in its opposition to PNC's motion that the district court should have differentiated any claim from those identified as representative by PNC. Nor did CET identify any other claims as purportedly containing an inventive concept. If CET disagreed with PNC's or the district court's assessment, CET could have identified claims in its opposition brief that it believed would not be fairly represented by claims 1 of the '855 and '416 patents for purposes of PNC's § 101 challenge.").

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS / CASE NO. 2:15-CV-05202-SJO-JC

**CERTIFICATE OF SERVICE**

I, hereby certify that on September 3, 2015 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

/s/ Sonal N. Mehta
SONAL N. MEHTA

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION TO DISMISS/CASE NO. 2:15-CV-05202-SJO-JC