I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
SIDDHARTHA VENKATESAN (STATE BAR NO. 245008)
svenkatesan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:   650-614-7400
Facsimile:    650-614-7401

MICHAEL C. CHOW (STATE BAR NO. 273912)
mchow@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, California  92614
Telephone:   949-567-6700
Facsimile:    949-567-6710

EDWIN EUGENE STEUSSY (STATE BAR NO. 299895)
esteussy@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California  90017
Telephone:   213-629-2020
Facsimile:    213-612-2499

Attorneys for Plaintiff
TIMEPLAY, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMEPLAY, INC., a Canadian corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>AUDIENCE ENTERTAINMENT LLC, a Delaware Limited Liability Company,<br><br>                    Defendant. | Case No. 15-CV-05202 SJO (JCx)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT AUDIENCE ENTERTAINMENT LLC'S MOTION TO DISMISS PURSUANT TO 35 U.S.C. § 101**<br><br>Hearing Date: October 19, 2015<br>Time: 10:00am<br>Courtroom: 1<br>Judge S. James Otero |

# TABLE OF CONTENTS

I. Introduction ...................................................................................... 1

II. Background Facts .............................................................................. 1

A. The Specification and File History of the '124 Patent ..................... 1

B.  The '124 Patent Advances the State of the Art in the Field of Multi-player Videogaming.............................................................................................4

III. Legal Background ............................................................................ 5

IV. Argument ......................................................................................... 9

1. AE Has Failed To Articulate Any "Abstract Idea" Claimed by the '124 Patent. ..................................................................................................... 9

a. AE Ignores All of the Specific Limitations of Claim 1............... 10

b. AE Cites No Case Law Showing that a Particularized Videogaming System is "Abstract."...................................................................................... 12

2. AE's Assertion that the '124 Patent is not "Inventive" Ignores the Specification, Claims, Prosecution History and Case Law............................ 13

3. AE's Motion Seeks Impermissible Claim Constructions and Validity Findings. .................................................................................................... 15

IV. Conclusion ...................................................................................... 17

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

TABLE OF CONTENTS
15-CV-05202 SJO (JCx)

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alice Corp. v. CLS Bank*,
  2014. 134 S. Ct. 2347 (2014) ..................................................*passim*

*Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*,
  AG, 2014 WL 7012391 (C.D. Cal. Nov. 12, 2014) ....................................*passim*

*Bilski v. Kappos*,
  561 U.S. 593 (2010) .................................................................... 6

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ............................................................ 8

*California Inst. of Tech. v. Hughes Comm'ns., Inc.*,
  59 F. Supp. 3d 974, 990 (C.D. Cal. 2014) ........................................... 11

*Content Extraction & Transmission LLP v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed Cir. 2014) .......................................................... 5, 15

*CyberFone Sys., LLC v. Cellco P'ship*,
  885 F. Supp. 2d 710 (D. Del. 2012) aff'd sub nom. *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,* 558 F. App'x 988 (Fed. Cir. 2014) ........................................................................ 16

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ........................................... 7, 10, 13, 14

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ....................................................................*passim*

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ........................................................................ 6

*IPLearn-Focus, LLC, v. Microsoft Corp.*,
  No. 14–cv–00151–JD, 2015 WL 4192092 (N.D. Cal. July 10, 2015) .......... 12, 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*
  132 S. Ct. 1289 (2012) ...................................................................... 3, 6, 9, 14

*Messaging Gateway Solutions, LLC v. Amdocs, Inc.*,
  No. CV 14-732-RGA, 2015 WL 1744343 (D. Del. Apr. 15, 2015) ..................... 9

*Modern Telecom Systems, LLC v. Earthlink, Inc.*,
  CV-14-0347-DOC, 2015 WL 1239992 (C.D. Cal. Mar. 17, 2015) ........... 8, 9, 13

*Nomadix, Inc. v. Hospitality Core Servs. LLC*,
  No. CV 14-08256 DDP VBKX, 2015 WL 1525537, at *2 (C.D.
  Cal. Apr. 3, 2015) ......................................................................... 15, 16

*Parker v. Flook*,
  437 U.S. 584 (1978) .............................................................................. 6

*Planet Bingo, LLC v. VKGS LLC*,
  576 Fed.Appx. 1005 (Fed. Cir. 2014) ......................................................... 8, 12

*In re TLI Commn's Patent Litig.*,
  2015 WL 627858 (E.D. Va. Feb. 6, 2015) ........................................................ 13

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
  No. 05-CV-4811, 2015 WL 774655 (N.D. Ill. Feb. 24, 2015) .......................... 10

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
  No. CV 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) .................. 5

*Ultramercial, Inc. v. Hulu, LLC*,
  722 F.3d 1335 (Fed. Cir. 2013) .................................................................... 5, 15

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) <u>cert. denied sub nom.</u> *Ultramercial,
  LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015)................................................. 8

**Other Authorities**

EXAMINATION GUIDANCE AND TRAINING MATERIALS,
  http://www.uspto.gov/patent/laws-and-regulations/examination-
  policy/examination-guidance-and-training-materials (last visited
  Sept. 21, 2015)........................................................................................ 3

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

TABLE OF AUTHORITIES
15-CV-05202 SJO (JCx)

## I. Introduction

Audience Entertainment's ("AE") motion to dismiss should be denied.  AE seeks to extinguish – at the pleadings stage and without the benefit of claim construction or expert testimony – all thirty eight claims of TimePlay, Inc.'s ("TimePlay") United States Patent 8,951,124 ("the '124 Patent").  Not only is AE's request premature, its motion is also without merit.

This case relates to a patented technology for multiplayer interactive gaming. The claims challenged by AE require at least two important and concrete innovations that improved the multi-player interactive gaming experience: (1) the ability to use a second display screen in each user's handheld game controller which is coordinated with a primary display screen shared by all users and (2) the ability to download software onto a game controller to facilitate this coordinated game play.  These claims, heavily vetted by the USPTO and allowed **after** the *Alice* and *Mayo* decisions, require these specific tangible features.

AE does not seriously address the actual limitations of any claims of the '124 Patent.  Nor does AE articulate any "abstract concept" that is claimed by the '124 Patent.  Rather AE makes a sweeping conclusion that the '124 Patent preempts games like "Pictionary" even though this assertion is plainly belied by the '124 Patent's claim language. AE offers no expert testimony, no claim construction, no analysis of the file history or the claim language.  This is simply not the type of superficial analysis that warrants a finding of patent ineligibility and no authority cited by AE supports such a proposition.

## II. Background Facts

### A. The Specification and File History of the '124 Patent

The '124 patent identified two problems with the prior art: the use of a single screen for a multi-user interactive game and the use of conventional game

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

controllers that could not process player-specific game tasks (such as registering for a game).  The "Background of the Invention" described that in the prior art, "[i]n a multi-player game environment where a large number of users can play an interactive action-based game in a single display screen….it may be difficult for one of the large number of players to identify his or her onscreen character (or avatar) amongst all the characters of the other players on the screen."  '124 Patent, Col. 1:25-32.  The Background further noted the limited communications capabilities in the prior art, as "[a] further problem in such a multi-player game environment arises in relation to receiving game input commands from all of the large number of players…it may not always be cost effective or practical to provide cabling or wiring to a large number of player input terminals for receiving the player input commands."  *Id*., Col. 1:38-44.

The '124 Patent ameliorates these specific shortcomings in at least two ways.  First, it has a solution that allows for two screens for interactive game play.  Second, it requires game controllers to download software for processing input commands that coordinate operations between the game controller and a gaming server.  The '124 Patent also includes a preferred embodiment allowing for wireless communications between the game controller and game server and other enhancements to further improve the game system.

The original provisional patent application for the '124 Patent was filed on September 21, 2004.  *Id*. at [22] and [60].  Following the filing of the provisional patent, the '124 Patent was subject to extensive scrutiny by the USPTO.  The USPTO considered over one hundred pieces of multi-player gaming prior art identified on the face of the patent.  *Id*. at [56].  The prior art included systems from major videogame companies such as Sony Corporation, Konami Co., Ltd. and Namco Ltd.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

The claims of the '124 Patent were initially rejected by the Examiner on March 23, 2012 in view of United States Patent 6,056,640. Following the rejection, the claims were amended. Ex. 1. at 2-8. The Examiner then rejected the amended claims. Ex. 2 at 1. After this rejection, the claims were further amended. The amendments included the following language:

> wherein the game server is configured to download a game software module to each of the plurality of handheld game controllers using the communication means prior to initiation of the multi-player game, the game software module for enabling participation in the multi-player game by manipulating one of the plurality of game controllers.

Ex. 3 at 2. After a third rejection, the patentee clarified that the claimed "game-specific software module is not the same as a multi-player game," distinguishing video game prior art in which an entire multi-player game was downloaded to a handheld gaming device. Ex. 4 at 14. Following an interview with the Examiner, the claims under the '124 Patent were allowed by the USPTO. Ex. 5 at 1.

During the prosecution of the '124 Patent, the U.S. Supreme Court issued the *Mayo* and *Alice* decisions. The Supreme Court decided *Alice Corp. v. CLS Bank* on June 19, 2014 and the USPTO issued preliminary guidelines regarding subject matter eligibility in accordance with *Alice* on June 25, 2014. 134 S. Ct. 2347 (2014); EXAMINATION GUIDANCE AND TRAINING MATERIALS, http://www.uspto.gov/patent/laws-and-regulations/examination-policy/examination-guidance-and-training-materials (last visited Sept. 21, 2015). Nevertheless, the Examiner never raised Section 101 eligibility at any point during the prosecution of the '124 Patent, despite the patent issuing after *Alice* on February 10, 2015.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

**B.  The '124 Patent Advances the State of the Art in the Field of Multi-player Videogaming.**

The '124 Patent claims "multi-player gaming" involving a "common display" where each player has a "game controller" with a "secondary display."  *See* '124 Patent, Cols. 42:22-52, 43:45-44:63.  Claim 1 of the '124 Patent requires specific technological components including: a "game server," a "display system having primary display means," "communication controller," and "game controllers" that a) are "configured to download a game software module" and b) each have a "secondary game display" that displays content that is "complementary to the primary game display."  These elements are reflected in Claim 1, shown below:

1. A *multi-player game system* comprising:

a *game server* configured to run a game software to facilitate a multi-player game, the game server further configured to provide display signals for displaying the multi-player game;

a *display system having primary display means*, the display system being configured to provide a primary game display of the multi-player game on the primary display means in response to the display signals;

a plurality of *handheld game controllers*, each handheld game controller having secondary display means and input means; and

*communication controller for enabling communication* between the game server and each handheld game controller;

wherein the plurality of handheld game controllers are located in proximity to the primary display means such that the primary display means is visible to game players manipulating respective handheld game controllers; and

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

wherein ***the game server is configured to download a game software module to each handheld game controller*** using the communication controller prior to initiation of the multi-player game, each game software module executable by the corresponding handheld game controller to enable the corresponding handheld game controller ***to provide a secondary game display on the secondary display means*** in response to player input received at the input means, ***wherein the secondary game display is complementary to the primary game display, and to enable participation in the multi-player game by the corresponding game player***.

*Id*., Col. 41:22-52 (emphasis added).

The claims that depend from Claim 1 add a number of additional technical features including, *inter alia*, further improvements to the handheld game controller such as: "wireless" game controllers (Claim 17-19 and 32-33), "touchscreens" (Claim 25 and 35), and a "rechargeable battery" in each game controller (Claim 30). *Id*. 42:10-43:20.

**III. Legal Background**

In applying Section 101 jurisprudence at the pleading stage, the Court construes the patent claims in a manner most favorable to Plaintiff. *See Content Extraction & Transmission LLP v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed Cir. 2014). Thus, prior to claim construction, "a patent claim can be found directed towards patent ineligible subject matter if the '*only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility.'" *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. CV 13-1771-RGA, 2014 WL 4382446 at *2 (D. Del. Sept. 3, 2014) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013)(emphasis in orginal)). AE cannot meet this standard.

1. *Alice* Recognized a Limited Exception to the General Rule of Patentability

In *Alice*, the Supreme Court applied a two prong test to determine patentable subject matter eligibility: a) assessing whether the claims are "directed to one of

Orrick, Herrington &
Sutcliffe LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

Pltfs. Memo of P&A in Opp. to Defs.
MTD under §101
15-CV-05202 SJO (JCx)

those patent-ineligible concepts" – a law of nature, physical phenomenon, or abstract idea, and, b) if so, whether it also claimed an "inventive concept" that "ensure[s] that the patent in practice amounts to significantly more than a patent on the [ineligible concept] itself." *Alice*, 134 S. Ct.at 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.* 132 S. Ct. 1289, 1303 (2012)).  The *Alice* Court applied the test to invalidate a method claim that covered the process of "mitigating 'settlement risk'" between financial institutions involved in multiple daily transactions.  *Alice*, 134 S. Ct. at 2351.  The representative claim analyzed by the Court did not involve any technological component.[1]  *Id.*

The Supreme Court concluded that the claim was an abstract idea because the use of "clearing houses" to mitigate settlement risk was a "fundamental economic practice long prevalent in our system of commerce."  *Id.* at 2356.  This decision was consistent with past Supreme Court decisions that limited "abstract ideas" only to formulas, algorithms, and other fundamental practices.  *See e.g., Gottschalk v. Benson,* 409 U.S. 63, 71-2 (1972) (mathematical formulas), *Parker v. Flook,* 437 U.S. 584, 594 (1978) (alarm algorithm), and *Bilski v. Kappos,* 561 U.S. 593, 609 (2010) (longstanding commercial practice of hedging risk).

The Supreme Court stressed that "we tread carefully in construing this exclusionary principle lest it swallow all of patent law" because "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"  *Alice*, 134 S. Ct at 2354 (citing *Mayo*, 132 S. Ct at 1293–1294.)  Accordingly, the "abstract idea" analysis (and the Section 101

---

[1] The Supreme Court noted that the claim in *Alice* was intended to be carried out on a generic computer, but the representative claim did not recite any computer components, let alone specific requirements for a computer component.  *Id.* at 2353.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY
- 6 -
PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

1  analysis more generally), is limited to claims that carry a "risk of pre-emption."

2  *Alice*, 134 S. Ct. at 2354-55.

3     With respect to the "inventive concept" prong, the *Alice* Court contrasted

4  methods carried out on "general purpose computers," with the system that survived

5  Section 101 scrutiny in the Supreme Court's prior opinion in *Diamond v. Diehr*,

6  450 U.S. 175 (1981). *Alice*, 134 S. Ct. at 2358. In *Diehr*, the Supreme Court found

7  that a mathematical algorithm used in assessing when rubber had cured was

8  patentable where it was implemented using a "computer" that performed "multiple

9  calculations" and a "thermocouple." *Id.* The *Diehr* Court emphasized that "claims

10  must be considered as a whole. It is inappropriate to dissect the claims into old and

11  new elements and then to ignore the presence of the old elements in the analysis."

12  *Diehr,* 450 U.S. at 188. The *Diehr* Court further stressed that the Section 101

13  analysis was limited and distinct from a Section 102/103 analysis, meaning that if a

14  court is attempting to determine whether a claim is "novel" or "nonobvious," then it

15  likely had strayed too far from the limited inquiry envisioned by the Supreme

16  Court. *Id.* at 191.

17     The representative patent claim in *Alice* did not recite even a general purpose

18  computer, and therefore was distinguished from the more particularized system of

19  *Diehr*. *Alice*, 134 S. Ct at 2358.

20     2. Federal Circuit Analysis Post-*Alice*

21     Neither *Alice* nor any of the cases that followed have invalidated patents

22  claiming a technical improvement to modern technology. For example, in *DDR*

23  *Holdings, LLC v. Hotels.com, L.P.*, the Federal Circuit upheld a patent claiming a

24  method for retaining visitors on a website through creation of a digital "store within

25  a store." 773 F.3d 1245, 1258 (Fed. Cir. 2014). These claims were limited to the

26  particular environment of an internet store while not "broadly and generically

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

1  claim[ing] 'use of the Internet' to perform an abstract business practice[.]" *Id*.  The

2  Federal Circuit found the claims patent eligible as they solved a problem particular

3  to their environment and did not "attempt to preempt every application of the

4  idea[.]" *Id*. at 1259.

5      In contrast, the Federal Circuit found patents ineligible when they merely

6  involved well-known concepts that were not tied to a particular technology.  *Planet*

7  *Bingo, LLC v. VKGS LLC*, 576 Fed.Appx. 1005 (Fed. Cir. 2014) (playing bingo

8  using a generic computer); *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709 (Fed. Cir.

9  2014) cert. denied sub nom. *Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct.

10 2907 (2015) (showing an ad before playing a video); *buySAFE, Inc. v. Google, Inc.*,

11 765 F.3d 1350 (Fed. Cir. 2014) (implementing a well-known concept of

12 guarantying "transaction performance" in online transactions).

13     The fundamental difference between these two lines of cases are that in one

14 instance there were technical improvements and in the other the presence of a

15 generic computer really did nothing to add to the inventiveness.  As a result, the

16 "something more" test could not be met.

17     Cases in this district follow this distinction.  For example, in *Ameranth, Inc. v.*

18 *Genesis Gaming Solutions, Inc.*, Judge Guilford rejected a Section 101 challenge to

19 a computer system involving player management in an online poker game.  No.

20 SACV 11-00189 AG, 2014 WL 7012391, at *1 (C.D. Cal. Nov. 12, 2014).  The

21 defendant argued that the claimed computer system, which had a number of specific

22 requirements, boiled down to the abstract concept of a "loyalty program."  *Id.* at *5.

23 Judge Guilford found that this concept was, at best, reflected in only a single

24 limitation and rejected the defendant's motion for summary judgment.  *Id.* at *3-*6.

25 Similarly, Judge Carter rejected a Section 101 motion in *Modern Telecom Systems,*

26 *LLC v. Earthlink, Inc.*, involving patents that claimed techniques that "control[] the

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

way a user modem communicates with a telephone company modem."  No. SA CV 14-0347-DOC, 2015 WL 1239992, at *9 (C.D. Cal. Mar. 17, 2015).  Though the claims at issue did not include any particular components other than unspecified "devices," Judge Carter nonetheless found that the Defendant had failed to meet its burden to show "that the specific steps recited in the patents pre-empt all inventions concerning communicating between two modems."  *Id.*

## IV. Argument

AE has failed to meet either prong of the *Mayo/Alice* test because the '124 Patent simply claims a specific "idea" rather than an "abstract idea," and because every claim of the '124 Patent contains numerous technological limitations that were found to be "inventive concepts" by the post-*Alice* USPTO.

AE has also failed to provide any actual evidence supporting its arguments under either prong of the eligibility test and therefore its Motion is premature.

> ### 1. AE Has Failed To Articulate Any "Abstract Idea" Claimed by the '124 Patent.

Any challenger to a patent can declare that a patent encompasses an "idea," since that is the definition of a patent.  *See*, e.g., *Messaging Gateway Solutions, LLC v. Amdocs, Inc.,* No. CV 14-732-RGA, 2015 WL 1744343, at *5 (D. Del. Apr. 15, 2015) ("If one looks at almost any patent from far enough away, it could arguably claim an abstract idea.  For example, Alexander Graham Bell's patent could be said to claim the abstract idea of oral communication.").  To challenge patentability, such a generic assertion is not enough.

In fact, AE's fundamental failure here is its inability to articulate any "*abstract* idea" encompassed by '124 Patent.  *Ameranth, Inc.*, 2014 WL 7012391, at *9 ("An inability to articulate an abstract idea to which claims are directed may be a clue that those claims satisfy § 101.").

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

### a. AE Ignores All of the Specific Limitations of Claim 1.

It is not entirely clear from AE's brief what it contends is the "abstract idea" claimed in the '124 Patent.  The closest AE gets to expressing an "abstract idea" is its statement "whether it be children playing in the classroom with a blackboard or families playing Pictionary at 'game night,' the concept of using a shared display to allow individuals to play the game together is just as basic."  AE Br. at 7.  However, this "abstract idea" is far more general than anything claimed in the '124 Patent.  *See*, e.g. *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2015 WL 774655, at *4 (N.D. Ill. Feb. 24, 2015) (holding that Defendant's proposed abstract idea, "placing an order for a commodity on an electronic exchange" did not correlate with the claims in the patents-in-suit.); *Ameranth, Inc.*, 2014 WL 7012391, at *9.

In reality, the '124 Patent only exists in the field of multi-player video gaming.  Its claims have core distinguishing features that a family playing Pictionary would never dream were necessary on game night.  For example, the claims require "game controllers" that provide a "secondary display" that is "complementary to the primary game display" and "enable participation in the multi-player game by the corresponding game player."  This feature cannot be abstracted away given how central it is in the description of the invention and the prosecution history.  Additionally, these "game controllers" are further required to receive a "game software module" from a "game server," another important requirement that again only exists in a multiplayer video game environment.  *See* '124 Patent Claim 1; *DDR Holdings,* 773 F.3d at 1257 (holding claims patentable, since they solve a problem arising in a unique environment, "[T]he claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

1   in the realm of computer networks.").  This improvement is significant, as is clear

2   from the prosecution history.  *Supra* at 2-3.

3       These specific limitations make clear that the '124 Patent does not preempt any

4   preexisting activity beyond the scope of the claimed invention, a further affirmation

5   that the claim does not encompass an "abstract idea." *Alice*, 124 S. Ct. at 2355.

6   One could, for example, simply play a multi-player game using gaming controllers

7   without "secondary displays."  Indeed, the numerous prior art references relied

8   upon by the Examiner during the prosecution history of the '124 Patent demonstrate

9   that one could implement many different multi-player video gaming systems that

10  do not infringe the claims.  *Ameranth*, 2014 WL 7012391, at *6.  Thus, this Court

11  should heed Judge Pfaelzer's recent opinion in rejecting a Section 101 challenge,

12  which noted "the court must be wary of litigants who exaggerate preemption

13  concerns in order to avoid developing innovative workarounds." *California Inst. of*

14  *Tech. v. Hughes Comm'ns., Inc.*, 59 F. Supp. 3d 974, 990 (C.D. Cal. 2014).

15      AE attempts to read out all of the particular technical requirements of the '124

16  Patent claims by adding the label "generic" on each limitation.  AE Br. at 6.  The

17  number of times AE feels compelled to add the word "generic" (thirteen times) to

18  the claims belies AE's argument that '124 Patent Claim 1 involves a simple and

19  generic computing environment.  Moreover, each of the components AE claims is

20  generic is described with particularized claim language describing the particular

21  aspect of the invention.  In fact, the Supreme Court has expressly rejected AE's

22  "dissection" of a claim approach. *Diehr,* 450 U.S. 175, 188 ("In determining the

23  eligibility of respondents' claimed process for patent protection under § 101, their

24  claims must be considered as a whole.")

25      Additionally, AE does not even attempt to grapple with any of the dependent

26  claims of the '124 Patent.  As described above, these dependent claims add

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 11 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

1  additional technical limitations, such as "wireless" communications, "touchscreens"

2  and the like. *Supra* at II. B. at 5. These more particular technical limitations are

3  even less "abstract" than the multi-player gaming system claimed in Claim 1.

### b. AE Cites No Case Law Showing that a Particularized Videogaming System is "Abstract."

6  AE also fails to cite any law that supports its position. The only gaming-

7  oriented case AE identifies is *Planet Bingo, LLC v. VKGS LLC.*, 576 Fed. Appx.

8  1005 (Fed. Cir. 2014). *Planet Bingo* involved "storing a player's preferred sets of

9  bingo numbers; retrieving one such set upon demand, and playing that set; while

10  simultaneously tracking the player's sets, tracking player payments, and verifying

11  winning numbers." *Id.* at 1006. No one disputed that the game of bingo was well

12  known and that the claims lacked any specialized technical components. *Id.* at

13  1008. *Planet Bingo* did not claim a hardware gaming architecture and recited no

14  specific components. Accordingly, it was clear that the patent claim consisted

15  solely of mental steps.

16  Similarly, *IPLearn-Focus, LLC* is distinguishable as it also did not involve any

17  specialized technical components. *IPLearn-Focus, LLC, v. Microsoft Corp.*, No.

18  14–cv–00151–JD, 2015 WL 4192092 (N.D. Cal. July 10, 2015). The patent in

19  *IPLearn-Focus* described the goal of the invention as seeking "to implement on a

20  computer the watchful eye of a good teacher, 'who constantly observes []

21  concentration-sensitive behavior, and dynamically adjusts her teaching materials

22  and style accordingly.'" *Id.* at *4. Moreover, the technical components of the

23  claim were components such as a bare "imaging sensor" and "processor," which

24  were admittedly well known and were not being used in an inventive way. *Id.*

25  Accordingly, the district court concluded that the patent, by its own admission, was

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 12 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

1   simply attempting to emulate good teaching practices of adapting content based on

2   a distracted student.  *Id.* at *1.

3        Finally, AE offers a throwaway cite in a footnote to the unreported case of *In re*

4   *TLI Commn's Patent Litig.*  AE Br. at 9-10 (citing MDL No. 1:14-md-2534, 2015

5   WL 627858 (E.D. Va. Feb. 6, 2015)).  That case involved the process of sorting and

6   classifying photographs and uploading particular photographs, a process that has

7   nothing to do with the claims of the '124 Patent.  *Id.*

8        In contrast to playing bingo, watching distracted students, and organizing

9   photos, the '124 Patent does not claim any age-old human activity.  Multi-player

10  video gaming using controllers with secondary displays is hardly a formula,

11  algorithm, or other fundamental practice.  Rather, the claims of the '124 Patent

12  encompass specific improvements to a modern technical field and leave many other

13  avenues for multi-player gaming open for use.  Therefore they are patentable.  *See,*

14  *e.g., DDR Holdings*, 773 F.3d 1245, 1257 ("[T]he claimed solution is necessarily

15  rooted in computer technology in order to overcome a problem specifically arising

16  in the realm of computer networks."); *Ameranth*, 2014 WL 7012391, at *8

17  ("Defendants have not demonstrated that the claims simply cover generic computer

18  implementation[.]"); *Modern Telecom*, 2015 WL 1239992, at *9  ("The claims here

19  'do not merely recite the performance of some business practice known from the

20  pre-Internet world along with the requirement to perform it on the Internet.'")

21  (internal quotations removed).

22        2. AE's Assertion that the '124 Patent is not "Inventive" Ignores the
           Specification, Claims, Prosecution History and Case Law.
23

24        AE has failed to meet its burden on the "inventive concept" prong as well.

25  Improving an existing technological process will transform a process into an

26  "inventive" application.  *Alice*, 134 S. Ct at 2358.  Such improvements may consist

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 13 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

1    of, for instance, implementing an existing process using a new combination of steps

2    in a way that is unconventional in the field.  *Mayo,* 132 S. Ct at 1298–1300.  For

3    example, a digital "store within a store" to retain visitors at a website was deemed

4    inventive despite the fact that e-commerce was well-known, as was the concept of

5    affiliate marketing.  *DDR Holdings,* 773 F.3d at 1258.  TimePlay's patent claims

6    easily meet the "inventive concept" test.  As described in the specification and

7    reflected in the file history, it was neither obvious nor anticipated to use handheld

8    game controllers with secondary screens capable of downloading game software

9    modules to play games for multi-player video gaming prior to the '124 Patent.

10   *Supra* at II. A. at 2.

11        AE ignores most of the limitations of Claim 1 and myopically focuses on the

12   fact that the '124 Patent includes the words "server," "display" and

13   "communications controller."  AE Br. at 6, 12.  AE's argument ignores that Claim 1

14   of the '124 Patent claims a complete system with multiple components that are

15   designed to work together in a novel manner.  There is no requirement that each

16   and every limitation of a patent claim must be novel in and of itself, which is why

17   claims must be considered as a whole and claim dissection is prohibited.  *Diehr,*

18   450 U.S. at 188.  And again, AE also fails to seriously address any claim that

19   depends from Claim 1 as well.

20        The prosecution history of the '124 Patent, which involved extensive

21   comparisons of the '124 Patent claims against numerous pieces of prior art, further

22   confirms the novelty of the invention.  *Supra* at II. A. at 3.  This detailed

23   prosecution activity led to claim amendments to clarify the scope of the '124 Patent

24   and a determination by the Examiner that the claims were a novel and useful

25   improvement over the prior art.  Despite the fact that *Alice* and subsequent Federal

26   Circuit cases interpreting Section 101 had been decided, nothing in the prosecution

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 14 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

history supports AE's assertion that the claims of the '124 Patent lacked an "inventive concept." Indeed, Section 101 did not even come up during prosecution.

### 3. AE's Motion Prematurely Seeks Impermissible Claim Constructions and Validity Findings.

Finally, AE's Motion to Dismiss is premature because the parties dispute issues of novelty and claim construction. *See Ultramercial, Inc.*, 722 F.3d at 1338. The claim construction of the components of the '124 Patent Claim 1 may very well alter the meaning of the claim. *See Nomadix, Inc. v. Hospitality Core Servs. LLC*, No. CV 14-08256 DDP VBKX, 2015 WL 1525537, at *2 (C.D. Cal. Apr. 3, 2015) (denying a motion to dismiss on § 101 grounds at the pleading stage since "the exact functioning of the patented system has not yet been fully briefed.") (Pregerson, J.) For example, there are several components that are recited in "means plus function" format, including a "primary display means," "secondary display means," and "input means." These limitations may be construed as specialized display and input components which would further undermine AE's Section 101 arguments. TimePlay is therefore entitled to a presumption of subject matter eligibility at this stage based on this claim language. *See Content Extraction & Transmission LLP* , 776 F.3d at 1349.

Similarly, the parties may dispute the meaning of the claimed "game software module" that is downloaded to the "game controller," and the outcome of this dispute may alter the technical meaning of the claim. Again, the construction of this limitation may be disputed, and therefore it should be limited to its appropriate, video game-specific context for the purposes of this Motion. Numerous other technical components in Claim 1 should similarly be construed as non-abstract technological components, such as "game server," "display system having primary display means," and "communications controller."

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 15 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

1    In short, to grant AE's Motion, the Court would have to construe all of the

2    claimed technical requirements to be generic.  Such claim construction rulings

3    would be legally improper in view of the claim construction presumption to which

4    TimePlay is entitled, not to mention an improvident use of judicial resources.  The

5    parties should properly frame the dispute with respect to claim construction,

6    validity and infringement for judicial determination in the ordinary course of

7    litigation, and not try to conduct a "mini-trial" on claim construction and

8    obviousness without the benefit of any evidence at the outset of the case.  AE

9    asserts that resolution now is appropriate based on the district court case of

10   *CyberFone Sys., LLC v. Cellco P'ships*.  AE Br. at 2 (citing 885 F. Supp. 2d 710,

11   715 (D. Del. 2012)).  But that case did not involve claim language that could alter

12   the scope and meaning of the claim given that the plaintiff could not articulate any

13   claim construction issue.  *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d

14   710, 715 (D. Del. 2012) aff'd sub nom. *Cyberfone Sys., LLC v. CNN Interactive*

15   *Grp., Inc.,* 558 F. App'x 988 (Fed. Cir. 2014) ("[W]hile plaintiff in this case did

16   argue that claim construction should occur prior to a § 101 analysis, plaintiff did

17   not explain how claim construction might alter such analysis.") (internal citation

18   removed).

19   Similarly, the Court should not rule as a matter of law that Claim 1 lacks an

20   "inventive step" without the benefit of fact and expert discovery and jury trial.

21   Such a ruling would essentially be a determination that the USPTO erred in

22   concluding that Claim 1 was novel over the extensive set of multi-player gaming

23   prior art cited during prosecution.  Rather, this Court should receive the full benefit

24   of fact and expert discovery, claim construction and trial before making such a

25   determination.  *Nomadix,* 2015 WL 1525537, at *2.

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 16 -

PLTFS. MEMO OF P&A IN OPP. TO DEFS.
MTD UNDER §101
15-CV-05202 SJO (JCx)

1

**IV. Conclusion**

2

For the foregoing reasons, TimePlay respectfully requests that the present

3

Motion to Dismiss be denied.

4

5

6

Dated:   September 28, 2015          ORRICK, HERRINGTON & SUTCLIFFE LLP

7

8

By:  */s/ Siddhartha Venkatesan*

9

SIDDHARTHA VENKATESAN
Attorneys for Plaintiff

10

TIMEPLAY, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 17 -